IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JULIANA HENSLER,

Plaintiff,

v.

No. 09-cv-268-DRH

CITY OF O'FALLON, IL,

Defendant.

## ORDER

**HERNDON, Chief Judge:**

Now before this Court is defendant's motion for summary judgment (Docs. 31 & 35) and plaintiff's rule 7.1(h) motion for oral argument (Doc. 36). For the following reasons, defendant's motion for summary judgment is GRANTED in part and DENIED in part, and plaintiff's motion for oral argument is DENIED as moot. Specifically, the only portion of the Complaint for which summary judgment is DENIED is the failure to promote theory of Count II's retaliation claim.

Plaintiff's complaint contains two counts and each count is supported by two separate theories. Count I alleges disability discrimination evidenced by a failure to promote plaintiff and constructive discharge of plaintiff. Summary judgment is granted on both theories because plaintiff has not suffered a disability as defined by the ADA. Summary judgment is further appropriate on the

constructive discharge theory of Count I because plaintiff has presented no evidence of the kinds of "intolerable conditions" required for constructive discharge.

Count II alleges retaliation for the plaintiff's charges of discrimination filed with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") evidenced by a failure to promote plaintiff and constructive discharge of plaintiff. Summary judgment is granted on the constructive discharge theory of Count II because, as in Count I, plaintiff has presented no evidence of the kinds of "intolerable conditions" required for constructive discharge. Summary judgment is denied on the failure to promote theory of Count II because there is a genuine issue of material fact as to whether defendant's failure to promote plaintiff was in retaliation for her filing the EEOC/IDHR charges.

## I. Introduction & Background

On April 8, 2009, plaintiff Juliana Hensler filed a two-count complaint under the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., against defendant City of O'Fallon, Illinois (Doc. 2). O'Fallon filed an answer and affirmative defenses denying all material allegations (Doc. 8). Hensler alleges O'Fallon did not promote her or constructively discharged her because of her disability (Count I) or in retaliation for charges of discrimination filed by Hensler with the EEOC and the IDHR (Count II). Plaintiff alleges she filed a timely charge

of discrimination with the EEOC and the IDHR, received a Notice of Right to Sue from both, and filed suit within 90 days from the receipt of those notices (Doc. 2).

**A. Timeline**

Hensler was formally diagnosed with fibromyalgia in 2000 and with chronic fatigue syndrome in 2004.[1] She began working for O'Fallon as a part-time dispatcher in February 2002. From February 2002 until February 2004, Hensler worked six-hour shifts two days a week, occasionally filling in for other dispatchers, which sometimes required working twelve-hour shifts. In February 2004, Hensler gave her supervisor a note from her doctor indicating her condition precluded her from working twelve-hour shifts. Her request was accommodated and she did not work twelve-hour shifts. In September 2005, Hensler submitted a doctor's note indicating she could work an "occasional twelve-hour shift." She was then assigned to a permanent part-time schedule. In December 2006, Hensler was removed from the January 2007 work schedule. In January 2007, Hensler sought unemployment benefits. In February 2007, Hensler was back on the schedule, working two four-hour shifts per week. She informed O'Fallon of her desire to be promoted to full-time employment. In March 2007, dispatcher Tora Ouchie was promoted to a full-time position. On March 30, 2007, Hensler filed a charge of discrimination with the EEOC. In April 2007, a second full-time dispatcher position opened, a job that went to Valerie Hancock. Hensler filed a

---

[1] Although the complaint does not mention chronic fatigue syndrome, the pleadings and motions do not draw distinctions between the kinds of symptoms and limitations of chronic fatigue syndrome and fibromyalgia and neither side disputes plaintiff has been diagnosed with both. The parties seem to treat them as two sides of the same coin. At any rate, distinction between the two has no bearing on the summary judgment determinations in this case.

charge of discrimination, this time with the IDHR, on April 25, 2007. In October 2007, Hensler was interviewed for a third full-time dispatcher position, along with three other candidates. That position ultimately went to Shelley Rowe, who began that job in October 2007. During that same month, Hensler was scheduled to work three twelve-hour shifts unassisted. She submitted her letter of resignation on October 17, 2007.

**B. Hensler's Medical Conditions**

Hensler was formally diagnosed with fibromyalgia in 2000 and with chronic fatigue syndrome in 2004. In her deposition, Hensler affirmed that during the time she worked for O'Fallon as a dispatcher, she was able to care for herself; perform manual tasks; walk; see; hear; and speak. Hensler Dep. pp. 198-99. She did not have trouble breathing, difficulty learning, or difficulty working. *Id.* at 199.

In an affidavit attached to Hensler's Reply to defendant's motion for summary judgment (Doc. 34-10), Hensler states that as a result of the fibromyalgia and chronic fatigue syndrome, she was "chronically fatigued and in significant pain" on a daily basis (¶ 4). She affirms these conditions "substantially interfered" with her ability to "move around, walk without pain, wake from sleep feeling refreshed, exert [her]self, stay awake, remain alert after twelve hours, sleep, and engage in recreational activities." *Id.* at ¶ 5. Further, these conditions "resulted in constant fatigue, muscle aches, and joint pain that made it difficult" for Hensler "to move around and ambulate without pain." *Id.* at ¶ 10.

As a general rule, a party may not create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony. *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996). Supplemental affidavits may be employed to clarify ambiguous or confusing deposition testimony. *Id.* In the context of opposing a motion for summary judgment, when a clear prior statement is contrasted with a later affidavit and the affidavit appears to be an effort to contradict the effects of deposition testimony and establish a missing link, a district court can rationally decide to strike the affidavit. *See id.* at 293 (affirming the district court's striking of an affidavit contradicting earlier deposition testimony and attempting to establish causation). Because Hensler's affidavit appears to be an effort to contradict her deposition testimony and establish a missing link of being substantially impaired in a way that constitutes a disability under the ADA, her affidavit will be stricken and not considered for summary judgment purposes.

## II. Law & Application

### A. Summary Judgment

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States,* 25 F.3d 530, 534

(7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

**B. ADA Discrimination**

The ADA protects "qualified individuals with a disability" from discrimination in their employment, the hiring process, or promotions. 42 U.S.C. § 12212(a)[2]; *Rooney v. Koch Air, LLC*, 410 F.3d 376, 380 (7th Cir. 2005). The statute defines a "qualified individual with a disability" as "an individual with a

---

[2] Significant changes to the ADA took effect on January 1, 2009, after the events at issue occurred. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). Congress did not express its intent for these changes to apply retroactively, and so we look to the law in place prior to the amendments. *Fredericksen v. United States Parcel Serv., Co.*, 581 F.3d 516, 521 n.1 (7th Cir. 2009). Similarly, changes to the 29 C.F.R. §§ 1630.1 and 1630.2 went into effect on May 24, 2011. *See* Regulations to Implement the Equal Employment Provisions of the Americans With Disabilities Act, as Amended, 76 Fed. Reg. 16978-01 (March 25, 2011) (to be codified at 29 C.F.R. § 1630). Nothing in those regulations clearly states they are to have retroactive effect; in fact, the revisions were necessitated by the Amendments Act. *See id.* (noting the Amendments Act "changes the way . . . statutory terms should be interpreted in several ways, therefore necessitating revision of the prior regulations and interpretive guidance"). Because a desire for retroactivity is not clearly expressed in the regulation, the next consideration is whether application of the regulation would have a retroactive effect, meaning it would impair vested rights or attach new consequences to completed transactions. *See Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994); *see also Labojewski v. Gonzales*, 407 F.3d 814, 819 (7th Cir. 2005). In this case, application of the regulations in question would have a retroactive effect, because they change the definition of, *inter alia*, "substantially limits" in a way designed not to require the level of limitation and the intensity of focus applied by the Supreme Court in *Toyota Motor Mfg., Ky, Inc. v. Williams*, 534 U.S. 184 (2002). *See* 76 Fed. Reg. 16978-01. Accordingly, the regulations will not be retroactively applied, and all citations to the regulations refer to the pre-2011 Code of Federal Regulations edition.

disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

### 1. Disability

An individual can prove she is disabled for ADA purposes in one of three ways: (1) she has a physical or mental impairment that substantially limits one or more major life activities; (2) she has a record of such an impairment; or (3) she is regarded as having such an impairment by her employer. 42 U.S.C. § 12102(2); *Sutton v. United Air Lines*, 527 U.S. 471, 478 (1999). A person is "regarded as disabled" when the employer, rightly or wrongly, believes that she has an impairment that substantially limits one or more major life activities. *Rooney*, 410 F.3d at 382. If the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the "regarded as" prong of the statute. *Id.*

Not all impairments or conditions qualify as a disability within the meaning of the ADA. *Rooney*, 410 F.3d at 381. To be disabled, "an individual must be so limited in one or more major life activities that she is impaired in her ability to 'perform the variety of tasks central to most people's lives.'" *Id.* (quoting *Toyota Motor Mfg., Ky. V. Williams*, 534 U.S. 184, 201 (2002)). A person is "substantially limited" in a major life activity when she is "[s]ignificantly restricted as to the condition, manner or duration under which [she] can perform a

particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii); *see also Turner v. The Saloon, Ltd.*, 595 F.3d 679, 689 (7th Cir. 2010).

The inability to perform a particular job "does not normally constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i); *Rooney*, 410 F.3d at 381. If a plaintiff's own testimony "leaves no doubt" that she is "able to perform the tasks central to most people's lives," that in itself "dooms" her claim that she is suffering from a disability cognizable under the ADA. *Rooney*, 410 F.3d at 381.

Plaintiff's deposition makes it abundantly clear that she is not so limited in one or more of her major life activities that she is impaired in her ability to perform tasks central to most people's lives, and there is no evidence suggesting otherwise. Plaintiff's deposition testimony specifically affirms she was able to walk, see, hear, speak, care for herself and perform manual tasks during her time as a dispatcher for defendant. Plaintiff further confirms she did not have trouble breathing, difficulty learning or difficulty working. Furthermore, there is nothing to suggest defendant "regarded" plaintiff as having such impairment. As such, defendant's motion for summary judgment as to Count I must be granted.

**2. Constructive Discharge**

To prevail on a claim for constructive discharge, "an employee must show both that a hostile work environment existed and 'that the abusive working

environment became so intolerable that her resignation qualified as a fitting response.'" *Rooney*, 410 F.3d at 382-83 (7th Cir. 2005) (citing *Pennsylvania State Police v. Suders,* 542 U.S. 129 (2004)). Beyond that, Hensler had to demonstrate that the constructive discharge was the result of her disability. *Rooney*, 410 F.3d at 382-83.

Examples of intolerable conditions of employment required in constructive discharge cases include an employee's boss consistently making racial comments and on one occasion holding a gun to his head, taking a photo, and later showing it at a staff meeting while making racial jokes (*Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188, 1191 (7th Cir. 1992)); an employee's human resource manager repeatedly showing her racist pornographic photos and making threatening comments to her including a threat to kill her (*Brooms v. Regal Tube Co.*, 881 F.2d 412, 417 (7th Cir. 1989)); and repeated use of a noose combined with implied threats of physical violence (*Porter v. Erie Foods Int'l*, Inc., 576 F.3d 629, 640 (7th Cir. 2009)).

Plaintiff here alleges having to work three twelve-hour shifts unassisted in October 2007 constituted such an abusive working environment that she was forced to resign. Even if plaintiff has been able to create a genuine issue of material fact as to whether she suffered a disability within the meaning of the ADA, which she has not done, summary judgment would still be appropriate on the constructive discharge theory of Count I because the intolerable conditions

plaintiff claims are nowhere near abusive enough to constitute constructive discharge.

**C. ADA Retaliation**

This Court's earlier conclusion that plaintiff does not have a disability within the meaning of the ADA does not foreclose a retaliation claim. The ADA prohibits an employer from retaliating against an employee who has raised an ADA claim regardless of whether that employee ultimately succeeds on the merits of that claim. *Squibb v. Mem'l Medical Ctr.,* 497 F.3d 775, 786 (7th Cir. 2007).

A plaintiff succeeds in establishing unlawful retaliation under a direct method of proof by presenting evidence of (1) a statutorily protected activity, (2) an adverse action, and (3) a causal connection between the two. *Id.*

To succeed under the indirect method of proof, a plaintiff must demonstrate that she (1) engaged in protected activity, (2) was performing her job satisfactorily, and (3) was singled out for an adverse employment action (4) that similarly situated employees who did not engage in protected activity did not suffer. *Miller v. Illinois Dept. of Transp.*, 643 F.3d 190, 200 (7th Cir. 2011); *Squibb*, 497 F.3d at 788. Mere temporal proximity between protected conduct and an alleged retaliatory act will rarely be sufficient in and of itself to create a triable issue. *See Miller*, 643 F.3d at 201.

The first prong under either method of proof—that plaintiff engaged in protected activity—has been met here. Filing charges of discrimination with the

EEOC and IDHR alleging disability discrimination and retaliation constitute a protected activity and there is no dispute plaintiff filed such charges here.

Both methods of proof also require plaintiff to present evidence of suffering an adverse employment action. For her constructive discharge theory of Count II, plaintiff is unable to show she suffered the "adverse employment action" of constructive discharge. As discussed above, working three twelve-hour shifts unassisted does not constitute such an abusive working environment that plaintiff was forced to resign. Without evidence to support constructive discharge, plaintiff is unable to show a prima facie case of retaliation. Summary judgment is granted on the constructive discharge theory of the retaliation claim in Count II.

For the failure to promote theory, however, plaintiff did present evidence that she was not promoted, which is an adverse employment action. The requirement under the indirect method of proof that plaintiff was performing her job satisfactorily is hotly contested between the parties, and both sides have offered facts supporting their arguments about plaintiff's job performance. There is enough evidence to create a genuine issue of material fact on this element.

The only remaining question is whether plaintiff has provided evidence either of a causal connection between her lack of promotion and her filing the EEOC/IDHR charges or that similarly situated employees who did not engage in protected activities did not suffer adverse employment action. Plaintiff has provided evidence sufficient under either method of proof to create a triable issue of fact.

First there is the timing. Plaintiff filed charges with the EEOC and IDHR on March 30, 2007 and April 25, 2007, and plaintiff was not promoted to full-time dispatcher positions that became open in March, April and August of 2007. Fellow dispatchers Tora Ouchie, Valerie Hancock and Shelly Rowe were promoted instead. The promotion of Tora Ouchie occurred prior to plaintiff's filing any charges of discrimination, meaning Ouchie's promotion could not have been retaliatory. While mere temporal proximity is rarely independently sufficient to create a triable issue, the temporal proximity here between the April and August promotions compared to plaintiff's complaints in March and April does support plaintiff's claim of retaliation. The timing is not the only evidence supporting plaintiff's argument.

Additionally, part of defendant's explanation for promoting Shelley Rowe over plaintiff was impartial oral interviews. Plaintiff has provided evidence that, if believed, could permit a trier of fact to determine the interview explanation is pretextual. The full-time slot Rowe filled was open in September 2007 and the interviews were to take place October 5, 2007. Prior to the interviews, Rowe was scheduled zero hours in October while plaintiff was given a typical part time schedule. It was only after the interviews that Rowe was given a full-time schedule for October. This could suggest the decision to hire Rowe and not promote plaintiff was made prior to the interview occurring.

Defendant further explains part of its decision for hiring Rowe was her education and experience as a dispatcher. However, plaintiff has provided

evidence that she was more experienced than Rowe: prior to being promoted to full-time, Rowe had never worked a shift by herself and did not have the Emergency Medical Dispatcher certificate, unlike plaintiff.

The timing of the promotions and evidence suggesting pretext are enough to withstand a motion for summary judgment. This Court does not mean to convey that the timing, interview process, and experience and education of Rowe are the only factors supporting plaintiff's argument of pretext; rather, those items are more than sufficient to create a genuine issue of material fact as to whether defendant retaliated against plaintiff for filing her EEOC and IDHR charges by not promoting her. Further review of other evidence is unnecessary. Summary judgment as to the failure to promote theory of Count II is denied.

### III. Conclusion

Defendant's motion for summary judgment is GRANTED in part and DENIED in part, and plaintiff's motion for oral argument is DENIED as moot. Specifically, the only portion of the Complaint for which summary judgment is DENIED is the failure to promote theory of Count II's retaliation claim.

Plaintiff's complaint contains two counts and each count is supported by two separate theories. Count I alleges disability discrimination evidenced by a failure to promote plaintiff and constructive discharge of plaintiff. Summary judgment is granted on both theories because plaintiff has not suffered a disability as defined by the ADA. Summary judgment is further appropriate on the constructive discharge theory of Count I because plaintiff has presented no

evidence of the kinds of "intolerable conditions" required for constructive discharge.

Count II alleges retaliation for the plaintiff's charges of discrimination filed with the EEOC and the IDHR evidenced by a failure to promote plaintiff and constructive discharge of plaintiff. Summary judgment is granted on the constructive discharge theory of Count II because, as in Count I, plaintiff has presented no evidence of the kinds of "intolerable conditions" required for constructive discharge. Summary judgment is denied on the failure to promote theory of Count II because there is a genuine issue of material fact as to whether defendant's failure to promote plaintiff was in retaliation for her filing the EEOC/IDHR charges.

**IT IS SO ORDERED.**

Signed this 28th day of July, 2011.

Digitally signed by David R. Herndon
Date: 2011.07.28 10:02:37 -05'00'

**Chief Judge
United States District Court**