IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JULIANA HENSLER,**

    **Plaintiff,**

**v.**                                                           Case No. 09-cv-268-DRH-PMF

**CITY OF O'FALLON, ILLINOIS,**

    **Defendant.**

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I.    INTRODUCTION

Pending before the Court are defendant City of O'Fallon's motion to exclude compensatory and punitive damages and strike plaintiff's jury demand (Doc. 51) and plaintiff Juliana Hensler's motion to reconsider grant of summary judgment (Doc. 55). On July 28, 2011, the Court partially granted defendant's motion for summary judgment on both counts of plaintiff's complaint, leaving only equitable remedies available to plaintiff (Doc. 41). Thus, defendant moved to exclude compensatory and punitive damages and strike plaintiff's jury demand (Doc. 51). Accordingly, plaintiff filed a motion to reconsider grant of summary judgment (Doc. 55). The Court **DENIES** plaintiff's motion (Doc. 55). Therefore, the Court **GRANTS** defendant's motion (Doc. 51).

## II. BACKGROUND

The dependent nature of the instant motions requires a brief recital of the relevant procedural history of this action. On April 8, 2009, plaintiff filed a two-count complaint under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* (Doc. 2). Plaintiff worked as a part-time dispatcher for defendant from February 2002-October 2007. The pertinent allegations stem from plaintiff's diagnosis of fibromyalgia in 2000 and chronic fatigue syndrome in 2004. Generally, plaintiff alleges defendant failed to promote her to the position of full-time dispatcher in violation of the ADA and the Illinois Human Rights Act. Further, plaintiff alleges defendant constructively discharged her, as it required her to work twelve hour shifts without assistance from other dispatchers (*See* Doc. 2).

The instant motions arise directly from the Court's July 28, 2011 Order (Doc. 41) granting in part defendant's motion for summary judgment (Doc. 31). As the Court previously alluded, plaintiff's initial complaint contained two counts each supported by two separate theories (Doc. 2). Count I alleged disability discrimination due to failure to promote and constructive discharge of plaintiff. The Court granted summary judgment on both theories of Count I, finding plaintiff had not suffered a "disability" as defined under the ADA. Moreover, the Court held summary judgment as to Count I appropriate due to plaintiff's failure

to present evidence of the "intolerable conditions" required of constructive discharge.

Count II alleges retaliation, as plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (IDHR). Plaintiff, in reliance on the same theories recited in Count I, alleged failure to promote and constructive discharge evidenced her retaliation claim. Thus, similarly to Count I, as plaintiff presented no evidence of the "intolerable conditions" required of a constructive discharge claim, the Court granted summary judgment as to the constructive discharge theory of Count II. However, as a genuine issue of material fact exists as to whether defendant's failure to promote plaintiff was in retaliation for her filing of discrimination charges, the Court denied summary judgment as to plaintiff's Count II failure to promote theory. Accordingly, the sole portion of the complaint surviving defendant's motion for summary judgment is plaintiff's failure to promote theory of her Count II claim for retaliation.

Plaintiff's complaint seeks compensatory damages in excess of $75,000.00, punitive damages in excess of $75,000.00, and liquidated damages. However, in the Seventh Circuit, compensatory and punitive damages are not recoverable on an ADA retaliation claim. *See Kramer v. Banc of Am. Secs., LLC*, 355 F.3d 961, 965 (7th Cir. 2004). Further, the statutory or constitutional right to a jury trial is contingent upon the ability to recover compensatory or punitive damages. *Id.* at

966. Accordingly, as the only remedies available to plaintiff are equitable in nature, defendant filed the instant motion to exclude compensatory and punitive damages and strike plaintiff's jury demand on November 1, 2011 (Doc. 51). Therefore, in recognition of *Kramer's* holding, plaintiff brought the instant motion to reconsider grant of summary judgment on November 21, 2011 (Doc. 55). As plaintiff responded to defendant's motion on November 21, 2011 (Doc. 56), and defendant responded to plaintiff's motion on December 2, 2011 (Doc. 57), the motions are ripe for resolution.

### III. **MOTION FOR RECONSIDERATION DENIED**

#### a. **ARGUMENTS**

In granting summary judgment as to both theories of Count I, the Court found plaintiff had not suffered a disability as defined under the ADA (Doc. 41, p. 8); *see Rooney v. Koch Air, LLC,* 410 F.3d 376, 381 (7th Cir. 2005). The Court so held, as plaintiff's deposition taken March 16, 2010, affirmed her ability to "walk, see, hear, speak, care for herself and perform manual tasks during her time as a dispatcher for defendant" and further confirmed "she did not have trouble breathing, difficulty learning or difficulty working" (Doc. 41, p. 8); (Doc. 31-1, p. 26).

However, in so ruling, the Court disregarded an affidavit dated October 7, 2010, that plaintiff attached to her response to defendant's motion for summary judgment (Doc. 34-10). Plaintiff's affidavit states she was "chronically fatigued

and in significant pain on a daily basis" (Doc. 34-10, ¶ 4). Plaintiff further states these symptoms, "substantially interfered with [her] ability to move around, walk without pain, wake from sleep feeling refreshed, exert [herself]. stay awake, remain alert after twelve hours, sleep, and engage in recreational activities" (Doc. 34-10, ¶ 5). Additionally, plaintiff alleges her conditions, "resulted in constant fatigue, muscle aches, and joint pain that made it difficult for [her] to move around and ambulate without pain or discomfort" (Doc. 34-10, ¶ 10). The Court determined plaintiff's previous deposition and later affidavit contradicted each other. Thus, the Court struck plaintiff's affidavit from the record (Doc. 41, p. 5) (citing *Buckner v. Sam's Club, Inc.,* 75 F.3d 290, 292 (7th Cir. 1996)).

The crux of plaintiff's argument is that the Court improperly interpreted plaintiff's affidavit as contradictory to her previous deposition. Plaintiff states, "there is simply no contradiction of any sort whatsoever between the plaintiff's affidavit and her deposition testimony" (Doc. 55, p. 2). In support, plaintiff states her deposition responses to a "series of vague, generic, and non-specific questions," do not directly address whether she suffered from a disability as defined under the ADA (Doc. 55, p. 2). Plaintiff refers to the following exchange:

> QUESTION: Okay. I just want to focus on the time frame that you were working for [defendant] as a dispatcher in relation to your medical condition. At the time you worked for [defendant] were you able to care for yourself?
> PLAINTIFF: Yes, ma'am.
> QUESTION: Were you able to perform manual tasks?
> PLAINTIFF: Yes, ma'am.
> QUESTION: Were you able to walk?

> PLAINTIFF: Yes, ma'am.
> QUESTION: Were you able to see?
> PLAINTIFF: I'm sorry. I didn't hear you.
> QUESTION: Were you able to see?
> PLAINTIFF: Yes, ma'am.
> QUESTION: Were you able to hear?
> PLAINTIFF: Yes, ma'am.
> QUESTION: Were you able to speak?
> PLAINTIFF: Yes, ma'am.
> QUESTION: Did you have trouble breathing?
> PLAINTIFF: No, ma'am.
> QUESTION: Any difficulty learning?
> PLAINTIFF: No, ma'am.
> QUESTION: Okay. And any difficulty working?
> PLAINTIFF: No, ma'am.

(Doc. 31-1, p. 26).

Plaintiff points to specific statements of her affidavit as support for the assertion that it does not contradict her earlier deposition. Regarding walking, plaintiff argues her affirmation of the ability to walk does not contradict her later statement that her conditions "substantially interfered with [her] ability to move around" and "walk *without pain*," as the two concepts are inherently different (Doc. 55, p. 4) (citing Doc. 34-10, p. 1) (emphasis added). Moreover, as to plaintiff's affidavit statement regarding sleep, plaintiff argues her deposition does not address the issue of sleep. Thus, plaintiff contends her statement that her conditions "substantially interfered" with her ability to "wake from sleep feeling refreshed" does not contradict her earlier deposition (Doc. 55, pp.4-5) (citing Doc. 34-10, p. 1).

Further, plaintiff argues her statement that "constant fatigue, muscle aches, and joint pain" made ambulating without pain difficult is not contradictory to her earlier testimony, as she stated in her deposition that she believed "fatigue, muscle aches, [and] joint pain" prevented her from working twelve-hour shifts in February of 2004 (Doc. 55, pp. 6-7) (citing Doc. 31-1, p. 6). Plaintiff states in her affidavit that her conditions "substantially interfered" with her ability to "engage in recreational activities" (Doc. 34-10, p. 1). Finally, plaintiff cites to the lack of deposition testimony concerning recreational activities as further bolstering the affidavit's non-contradictory nature (Doc. 55, p. 6). Thus, plaintiff argues the Court improperly disregarded her affidavit, as it does not contradict her earlier deposition testimony. Accordingly, plaintiff contends the Court should reconsider its finding that plaintiff is not "disabled" as a matter of law under the ADA.

Defendant responds that the Court properly rejected plaintiff's "self-serving, conclusory affidavit" (Doc. 57, p. 2). Defendant argues it specifically asked plaintiff whether she was able to perform the list of examples of "major life activities" that the Department of Health, Education, and Welfare Rehabilitation Act regulations (HEW regulations) provide (Doc. 57, p. 2) (citing 45 CFR § 84.3(j)(2)(ii)). Defendant cites to plaintiff's unqualified affirmations of her ability to perform the pertinent "major life activities." It argues had plaintiff responded differently to its direct inquiries, defendant would have questioned plaintiff

further to determine whether her conditions "substantially limited" the relevant activities (Doc. 57, p. 2).

Further, defendant contradicts plaintiff in her assertion that defendant did not depose plaintiff concerning the quality of her sleep. Defendant refers to its damages-related inquiry, "How many- how frequently did you have difficulty sleeping?" Plaintiff responded,

> From December '06 when this started until the day I left on October 17th and then whenever this came about again with it all. IDHR, fact finding conferences. I had to find another job. I had to start another entry level job at part time and learn a whole 'nother career from what I had been doing. I had done this job for over- for 20 years. Because the community is so small, there is no way I was going to get another dispatch job in this area without somebody saying something or somebody knowing something about the circumstances

(Doc. 57-1, p. 5). Additionally, defendant cites to plaintiff's deposition response that she takes prescription medication to achieve "more restful sleep" (Doc. 57-1, p. 2). Defendant argues the aforementioned statements contradict plaintiff's later statement that her conditions "substantially interfered" with her ability to "wake from sleep feeling refreshed," as her earlier testimony leads to the reasonable conclusion that plaintiff's difficulty sleeping is either unrelated to her medical conditions or ameliorated through medication (Doc. 57, p. 3) (citing Doc. 34-10, p. 1).

Lastly, defendant generally refers to plaintiff's statements concerning her medical conditions' substantial interference with her ability to exert herself and engage in recreational activities (Doc. 57, p. 3) (citing Doc. 34-10, p. 1).

Defendant cites to plaintiff's earlier statement that certain "adjustments" in her "diet, exercise, [and] vitamin supplements," in addition to "massage therapy," led her to believe she was physically capable of working twelve hour shifts multiple days in a row in February of 2007, as evidence of the affidavit's contradictory nature (Doc. 57, p. 4) (citing Doc. 57-1, p. 4). Thus, defendant argues plaintiff's earlier deposition demonstrates plaintiff was "not severely restricted in her ability to exert herself, stay awake, [or] perform the activities set forth in her subsequent affidavit" (Doc. 57, p. 4). Accordingly, defendant argues the Court properly disregarded plaintiff's later affidavit (Doc. 57, p. 4) (citing *Beckel v. Wal-Mart Assoc., Inc.,* 301 F.3d 621, 623 (7th Cir. 2002)).

Alternatively, defendant contends that had the Court considered plaintiff's affidavit, it would have reached the same conclusion; plaintiff did not meet her burden of establishing she is a "qualified individual with a disability" under the ADA (*See* Doc. 57, pp. 1, 4) (citing *McPhaul v. Bd. of Comm'rs. of Madison Cnty.*, 226 F.3d 558, 563 (7th Cir. 2000)). Defendant argues plaintiff has not presented evidence that she is "severely restricted from doing activities that are of central importance to most people's daily lives," as her evidence, including the disputed affidavit, consists of "conclusory statements with no factual support in the record" (Doc. 57, pp. 4-5) (citing *Toyota Motor Mfg., Ky, Inc. v. Williams*, 534 U.S. 184 (2002)). Defendant states plaintiff's affidavit does not provide the details necessary to create a genuine issue of material fact as to whether plaintiff is

severely restricted from performing "major life activities" (Doc. 57, pp. 5-7) (citing *E.E.O.C. v. Sears, Roebuck & Co.,* 417 F.3d 789, 802 (7th Cir. 2005); *Rooney,* 410 F.3d at 380; *Stein v. Ashcroft*, 284 F.3d 721, 726-27 (7th Cir. 2002); *Fredericksen v. U.P.S., Co.,* 581 F.3d 516, 522-23 (7th Cir. 2009); *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 756-57 (7th Cir. 2006)). Accordingly, defendant argues the Court properly determined plaintiff has not suffered a "disability" under the ADA, regardless of the affidavit's admissibility (Doc. 57, p. 7).

### b. LAW AND APPLICATION

#### i. Motion to Reconsider

Before considering the merits of plaintiff's argument, it is necessary to identify the authority for the instant motion to reconsider, as plaintiff is entirely silent as to the applicable standard. As a partial grant of summary judgment is not a final judgment, a motion to reconsider that decision does not technically fall within the purview of FEDERAL RULE OF CIVIL PROCEDURE 59(e), as that rule addresses motions to alter or amend judgments. *See* Fed. R. Civ. P. 59(e). Neither does Rule 60(b) directly address the motion at hand, as it provides a procedure for seeking relief from a final judgment, order, or proceeding. *See* Fed. R. Civ. P. 60(b). However, Rule 54(b) provides, a non-final order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *See* Fed. R. Civ. P. 54(b). Thus, Illinois district courts have looked to Rule 54(b), common law, or the court's inherent

authority as a vehicle for reconsideration of interlocutory orders. *See Ramada Franchise Sys., Inc. v. Royal Vale Hospitality of Cincinnati, Inc.*, No. 02 C 1941, 2004 WL 2966948, at *3 (N.D.Ill. Nov. 24, 2004) (compiling cases).

Although Rule 54(b) and the court's inherent authority inform the ability to review non-final orders, the law of the case doctrine governs whether reconsideration of a previous ruling in the same case is appropriate. *See Santamarina v. Sears, Roebuck & Co.,* 466 F.3d 570, 571-72 (7th Cir. 2006). The law of the case doctrine is a discretionary doctrine; authorizing such reconsideration provided a "compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." *Id.* at 572 (citing *Agostini v. Felton*, 521 U.S. 203, 236 (1997); *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816-17 (1988); *Brengettcy v. Horton,* 423 F.3d 674, 680 (7th Cir. 2005); *Williams v. Comm'r,* 1 F.3d 502, 503 (7th Cir. 1993); *McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001)).

### ii. ADA Discrimination

"The ADA protects 'qualified individuals with a disability' from discrimination in their employment, the hiring process, or promotions." *Rooney,* 410 F.3d at 380 (citing 42 U.S.C. § 12112(a)).[1] The statute defines a "qualified

---

[1] As the Court explained in its July 28, 2011 Order, significant changes to the ADA took effect on January 1, 2009, after the events at issue occurred. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). Congress did not express its intent for these changes to apply retroactively, and so we look to the law in place prior to the amendments. *Fredericksen v. United States Parcel Serv., Co.*, 581 F.3d 516, 521 n.1 (7th Cir. 2009). Similarly, changes to the 29 C.F.R. §§ 1630.1 and 1630.2 went into effect on May 24, 2011. *See* Regulations to Implement the Equal Employment Provisions of the Americans With Disabilities Act, as Amended, 76 Fed. Reg.

individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  The ADA defines "disability" as, "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).

As plaintiff limits her motion to reconsideration of the Court's determination that plaintiff is not "disabled" under (A), the Court restricts its discussion accordingly.  Thus, the Court must determine whether plaintiff has presented a change in, or clarification of, the law the Court relied upon in determining that she has not presented sufficient evidence that she possesses a physical or mental impairment that substantially limits one or more of her major life activities.

---

16978-01 (March 25, 2011) (to be codified at 29 C.F.R. § 1630). Nothing in those regulations clearly states they are to have retroactive effect; in fact, the revisions were necessitated by the Amendments Act. *See id.* (noting the Amendments Act "changes the way . . . statutory terms should be interpreted in several ways, therefore necessitating revision of the prior regulations and interpretive guidance"). Because a desire for retroactivity is not clearly expressed in the regulation, the next consideration is whether application of the regulation would have a retroactive effect, meaning it would impair vested rights or attach new consequences to completed transactions. *See Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994); *see also Labojewski v. Gonzales*, 407 F.3d 814, 819 (7th Cir. 2005). In this case, application of the regulations in question would have a retroactive effect, because they change the definition of, *inter alia*, "substantially limits" in a way designed not to require the level of limitation and the intensity of focus applied by the Supreme Court in *Toyota Motor Mfg., Ky, Inc. v. Williams*, 534 U.S. 184 (2002). *See* 76 Fed. Reg. 16978-01. Accordingly, the regulations will not be retroactively applied, and all citations to the regulations refer to the pre-2011 Code of Federal Regulations edition.

Notably, not all impairments or conditions qualify as a disability within the meaning of the ADA. *Rooney*, 410 F.3d at 381. To be disabled, "an individual must be so limited in one or more major life activities that she is impaired in her ability to 'perform the variety of tasks central to most people's lives.'" *Id.* (quoting *Toyota Motor Mfg.,* 534 U.S. at 185). The HEW regulations list "walking, seeing, hearing, speaking, breathing, learning, and working" as examples of "major life activities." *See* 45 C.F.R. § 84.3(j)(2)(ii). A person is "substantially limited" in a major life activity when she is "[s]ignificantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *See* 29 C.F.R. § 1630.2(j)(1)(ii); *see also Turner v. The Saloon, Ltd.,* 595 F.3d 679, 689 (7th Cir. 2010). Importantly, if a plaintiff's own testimony "leaves no doubt" that she is "able to perform the tasks central to most people's lives," that in itself "dooms" her claim that she is suffering from a disability cognizable under the ADA. *Rooney*, 410 F.3d at 381.

As explained at length, in finding plaintiff had not presented sufficient evidence demonstrating her status as "disabled" under the ADA, the Court disregarded plaintiff's affidavit due to its contradictory nature. The Court found plaintiff did not intend for her affidavit to clarify ambiguous or confusing

deposition testimony, but intended to create a question of material fact to survive summary judgment. *See Buckner,* 75 F.3d at 292.

The Court so held as it is well-established in the Seventh Circuit that "[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001) (citing *Slowiak v. Land 'O Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993)). Thus, "[w]hen a party is deposed and later files an affidavit which differs from the prior deposition testimony, '[i]f the later statement is sufficiently unlikely- to the point of unreliable- then it cannot be used to create a 'genuine issue of material fact.'" *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998) (citing *Unterreiner v. Volkswagon of Am., Inc.,* 8 F.3d 1206, 1210 (7th Cir. 1993)). Accordingly, a party cannot create an issue of fact through submission of an affidavit whose conclusions contradict prior testimony. *Id.* (citing *Russell v. Acme-Evans Co.,* 51 F.3d 64, 67-68 (7th Cir. 1995)).

Plaintiff has not presented a compelling reason to reconsider the Court's previous finding that plaintiff's affidavit contradicts her earlier deposition. The affidavit is sufficiently unlike the previous deposition as to render it unreliable. Specifically, plaintiff argues her affidavit does not contradict her earlier testimony concerning the "major life activities" of walking and moving about without pain, sleep, and constant fatigue, muscle aches, joint pain, and recreation. Regarding

plaintiff's ability to walk without pain, the Court concedes the difference between the ability to walk and the ability to walk *without pain*. However, the Court cannot conclude that plaintiff's later affidavit merely clarifies answers given during her deposition. As defendant argues, plaintiff answered defendant's inquiry into her ability to walk affirmatively and without qualification. The record is devoid of other evidence, excluding her later affidavit, concerning plaintiff's difficulties walking. Thus, plaintiff's affidavit does not clarify earlier testimony, but contradicts previous statements concerning her ability to walk.

The Court similarly holds plaintiff's affidavit statements concerning sleep contradict her deposition testimony. As defendant states, plaintiff's deposition contains statements concerning her quality of sleep. Although plaintiff does not directly address the source of her difficulties sleeping, she alludes to anxiety concerning her need to find alternate employment as the source; not her medical conditions (*See* Doc. 57-1, p. 5). Moreover, plaintiff's deposition states medication helps her achieve a "more restful sleep" (Doc. 57-1, p. 2). Thus, the Court finds plaintiff's earlier deposition contradicts her later statement that her conditions "substantially interfered" with her ability to "wake from sleep feeling refreshed" (Doc. 34-10, p. 1).

Lastly, as to plaintiff's affidavit allegations concerning constant fatigue, muscle aches, joint pain, and recreation, the Court similarly finds it contradicts previous deposition testimony. As defendant relevantly states, plaintiff stated in

Page **15** of **20**

her deposition she believed she was capable of working twelve hour shifts multiple days in a row in February of 2007, due to changes in diet, exercise, vitamin supplements, and massage therapy (*See* Doc. 57-1, p. 4). Moreover, the Court notes plaintiff stated she believed she was able to perform a job that would require her to remain standing for periods of up to three hours and lift an object weighing seventy pounds in January of 2007 (*See* Doc. 31-1, p. 18). Thus, the Court finds her later statements concerning constant fatigue, muscle aches, joint pain, and inability to engage in recreation sufficiently contradict her earlier deposition as to prove unreliable. Thus, the Court properly disregarded the affidavit in determining plaintiff was not "disabled" under the ADA.

Moreover, assuming *arguendo* the Court improperly disregarded the affidavit, plaintiff's affidavit does not present sufficient details to create a genuine issue of material fact. Defendant cites to *Stein v. Ashcroft*, 284 F.3d 721 (7th Cir. 2002),[2] as instructive in this regard. The Court agrees. In *Stein,* the Seventh Circuit held Stein had not presented sufficient evidence in support of her theory that her physical impairment precluded her from working a broad class of jobs or substantially limited other "major life activities." *Id.* at 725-26. As to her impairment's limitations on "major life activities," Stein contended it caused "loss

---

[2] Although *Stein* pertains to the meaning of "disability" under the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.,* the ADA's definition of "disability" was taken "almost verbatim" from the Rehabilitation Act, and "Congress' repetition of a well-established term carries the implication that Congress intended the term to be construed with pre-existing regulatory interpretations." *Bragdon v. Abbott,* 524 U.S. 624, 631 (1998); *Toyota Motor Mfg,* 534 U.S. 184 (using Rehabilitation Act regulations to interpret the ADA); *see also Hamm v. Runyon,* 51 F.3d at 725 (using ADA case law to interpret the Rehabilitation Act).

of sleep, impaired sexual relations, inability to participate in sports, inability to cut her food and inability to brush her hair." *Id.* at 726. However, the only evidence of such limitations was Stein's own affidavit containing conclusory statements that,

> these problems existed, without any factual support, examples, details, nor any indication as to whether the problems [were] currently extant or resolved, when, where or how the problems developed, how severe they were, or how long they may have lasted. Her affidavit failed to state whether she ha[d] ever been diagnosed as suffering from these specific limitations on her functioning or whether she ha[d] ever received medical treatment for them. Moreover, Stein's affidavit referr[ed] to these alleged problems only in the past tense.

*Id.* Further, the court noted, "Stein [had] failed to present any medical records, evaluations or opinions that support[ed] either the past or present existence of these alleged specific limitations on her ability to function." *Id.*

Thus, the court held Stein's "[b]ald and self-serving assertions," that were "unsubstantiated by any documentation or other testimony," insufficient to create a material issue of fact concerning her impairment's substantial limitation on a "major life activity." *Id.* (citing *Contreras v. Suncast Corp.*, 237 F.3d 756, 764 (7th Cir. 2001)). Therefore, the Seventh Circuit upheld the trial court's grant of summary judgment, as Stein did not present evidence, medical or otherwise, that the impact of her impairment was "permanent or long-term" and that "the extent of the limitation . . . in terms of [her] own experience . . . [was] substantial." *Id.* (citing *Toyota Motor Mfg.*, 534 U.S. at 185).

In light of *Stein's* holding, the Court concludes it correctly found plaintiff presented no evidence creating a question of material fact as to her status as "disabled" under the ADA. Similarly to Stein, plaintiff's affidavit contains bald, self-serving assertions concerning her conditions' impact on various "major life activities." It does not state examples, details, time periods, or information concerning relevant medical treatments or diagnoses. It merely makes past-tense assertions of general fibromyalgia and chronic fatigue-related symptoms and summarily states their impact as "substantially interfering" with various "major life activities." Such conclusory allegations cannot create a question of material fact.

Moreover, the plaintiff's evidence is devoid of medical evaluations entirely. The only medically-related evidence plaintiff submits is a doctor's note dated February 25, 2004, that states plaintiff "suffers from chronic fatigue syndrome and [] should not work 12-shifts" (Doc. 34-6). Accordingly, plaintiff's only evidence, apart from the affidavit, concerning the extent of her conditions' impact is deposition testimony that she experienced "fatigue, muscle aches, [and] joint pain" on a daily basis (Doc. 31-1, p. 6). Thus, plaintiff has not presented evidence, medical or otherwise, demonstrating the permanent or long-term nature of her conditions, or that the extent of her limitations is substantial. As such, plaintiff's motion to reconsider is **DENIED** (Doc. 55).

## IV. MOTION TO EXCLUDE COMPENSATORY AND PUNITIVE DAMAGES AND STRIKE JURY DEMAND GRANTED

In the Seventh Circuit, compensatory and punitive damages are not available under the ADA's retaliation provision. *Kramer,* 355 F.3d at 965 (stating, "[b]ecause claims of retaliation under the ADA (§ 12203) are not listed, compensatory and punitive damages are not available for such claims. Instead, the remedies available for ADA retaliation claims against an employer are limited to the remedies set forth in § 2000e-5(g)(1)"). Further, as the *Kramer* Court noted, the statutory or constitutional right to a jury trial is dependent on the ability to recover compensatory and punitive damages. *Id.* at 966. As the Court denies plaintiff's motion to reconsider grant of summary judgment, plaintiff's only available remedies are equitable in nature. Although plaintiff believes *Kramer* was wrongly decided, she does not dispute its applicability to the case at hand (Doc. 56, p. 1). Accordingly, defendant's motion is **GRANTED** (Doc. 51).

## V. CONCLUSION

Plaintiff has not presented a compelling reason for the Court to reconsider its partial grant of summary judgment. Thus, the Court **DENIES** plaintiff's motion to reconsider grant of summary judgment (Doc. 55). Accordingly, the Court **GRANTS** defendant's motion to exclude compensatory and punitive damages and strike plaintiff's jury demand (Doc. 51).

**IT IS SO ORDERED.**

Signed this 31st day of January, 2012.

David R. Herndon
2012.01.31 11:37:22
-06'00'

**Chief Judge
United States District Court**